UNITED STATES of America, Appellee,

v.

Valerie Malisse HOOKER, Appellant.

No. 92–3245.

United States Court of Appeals, District of Columbia Circuit.

Argued May 3, 1993.

Decided May 28, 1993.

Amanda A. Gibson, Atty. of the bar of the Supreme Court of Pennsylvania, pro hac vice, by special leave of the Court, with whom Jeffrey S. Jacobovitz was on the brief, for appellant.

Steven D. Mellin, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty.,* John R. Fisher, Thomas C. Black, and Norman C. Bay, Asst. U.S. Attys., were on the brief, for appellee.

Before: SILBERMAN, BUCKLEY and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Appellant challenges the district court's decision to revoke her probation and impose a sentence of 12 months. We reject appellant's claim that the district court applied an improper evidentiary standard, but we agree that the court incorrectly believed itself bound by the policy statements in Chapter VII of the Sentencing Guidelines. Accordingly, we remand.

## I.

Valerie Malisse Hooker pleaded guilty on September 3, 1991, to one count of a five-count indictment—distributing cocaine base in violation of 21 U.S.C. §§ 841(a) & (b)(1)(C). Hooker was sentenced to two years of probation. While on probation, Hooker was twice arrested for possession of cocaine base with the intent to distribute, on June 22, and September 3, 1992. The district court held a probation revocation hearing on October 22, 1992. At that time, an indictment for the June 22, 1992 arrest was pending before the superior court, and a federal grand jury was deliberating over the September 3, 1992 arrest. Both cases were subsequently dismissed.

Hooker testified on her own behalf at the revocation hearing. The district judge concluded that Hooker had violated the conditions of her probation under either the preponderance of the evidence or the "to the reasonable satisfaction of the judge" test. Then, applying the policy statements in Chapter VII of the Guidelines, the judge revoked Hooker's probation and sentenced her to 12 months of incarceration.

## II.

Hooker argues that the revocation proceeding violated her constitutional right to due process. She complains first that she lacked sufficient notice of the evidentiary standard that the district court would apply because the D.C. Circuit has not yet determined the issue. The district court's Rule 309(c)(4), however, applies a preponderance of the evidence standard to determinations of whether a defendant violated a probation condition. Local Rule 309(c)(4) (D.D.C.). And that rule provides constitutionally sufficient notice. To be sure, the district judge remarked at the outset of the hearing that the relevant standard was *either* the preponderance of the evidence or to the reasonable satisfaction of the judge. But the defendant had adequate notice of the standard actually applied because, as the district court correctly observed, there is little, if any, difference between the standards, and, more important, the judge made clear that she found a probation violation under either standard.

Hooker's alternative due process claim is that even the preponderance of the evidence standard (the ostensibly stricter standard) does not provide adequate protection to the defendant and that the clear and convincing standard is constitutionally required. But appellant does not point us to any case that supports that proposition. *Cf. Harris v. United States,* 612 A.2d 198, 205

* At the time the brief was filed. Bills of costs must be filed within 14 days after entry of judgment.

The court looks with disfavor upon motions to file bills of costs out of time.

(D.C.1992) (concluding that the clear and convincing standard "has no support in the case law of any of the federal courts of appeal").[1] Indeed, all of the circuits that have considered the issue require only that the judge be reasonably satisfied that the defendant has violated the terms of his probation. *See, e.g., United States v. Lettieri,* 910 F.2d 1067, 1068 (2d Cir.1990); *United States v. Warner,* 830 F.2d 651, 655 (7th Cir.1987). And that standard may be less favorable to the defendant than the preponderance of the evidence test embodied in the district court rule. *Cf. id.* at 655.

The government favors the preponderance standard—even over the reasonably satisfied test (presumably, because the former is a more traditional objective test which restrains district judges inclined to be lenient as well as strict). It believes that the decision to revoke probation is akin to a sentencing decision. In both contexts, the government has already obtained a conviction so that the defendant does not have the same liberty interest that he had at trial. *See Black v. Romano,* 471 U.S. 606, 611–13, 105 S.Ct. 2254, 2257–58, 85 L.Ed.2d 636 (1985). We agree with the government that the preponderance of the evidence standard, incorporated in the district court rule, is appropriate, if not necessarily constitutionally required, and that it is certainly adequate to protect a defendant's due process rights.[2]

### III.

Hooker's more substantial argument is that the district court erred in viewing the policy statements in Chapter VII of the Sentencing Guidelines as binding. The district judge clearly treated them as mandatory during the revocation proceeding. She first found that Hooker's actions were a grade A violation under U.S.S.G. § 7B1.1(a)(1), and then observed that under U.S.S.G. § 7B1.3(a)(1), "[i]f I find her in violation of a grade A offense, then I must mandatorily revoke probation." Using the Revocation Table in § 7B1.4(a), the district court judge sentenced Hooker to the bottom of the 12 to 18 months range.

■ Although the policy statement on which the district judge relied uses mandatory language—"[u]pon a finding of a Grade A or B violation, the court shall revoke probation" U.S.S.G. § 7B1.3(a)(1)—the Chapter VII policy statements themselves are merely advisory. The Introduction to Chapter VII explains that the policy statements were devised to provide interim guidance to the courts. Only after gathering information on the courts' experience in applying the policy statements, will the Commission promulgate final Guidelines. The Commission said, "[a]t the outset, [we] faced a choice between promulgating guidelines or issuing *advisory* policy statements for the revocation of probation...." U.S.S.G. Ch. 7, Pt.A3(a), Introduction (emphasis added). The Commission chose the latter option because that "approach provided greater flexibility to both the Commission and the courts." *Id.* The statutes that govern probation revocation, moreover, instruct the courts to "consider" policy statements of the Commission, *see* 18 U.S.C. §§ 3553(a)(5), 3565(a), but do not suggest that the courts must follow those statements. Every circuit that has faced the issue has held the Chapter VII policy state-

---

**1.** It is also unclear whether a clear and convincing standard would be in the best interests of defendants as a class. When a district judge makes the initial choice between incarceration and probation, he no doubt considers the ease with which probation can be revoked if the defendant does not honor the conditions of probation. The more difficult we make it for trial judges to revoke probation the less likely they will be to offer defendants probation in the first place.

**2.** Hooker also claims that the district court's decision to hold the revocation proceeding before the pending criminal charges against her had been resolved violated her Fifth Amendment privilege against self-incrimination. Appellant argues that this procedure impermissibly allows the government to use her revocation proceeding testimony at a later criminal trial. But the charges against Hooker were eventually dropped, and the Supreme Court has made clear that cross-examination during the revocation proceeding *cannot itself violate the Fifth Amendment privilege against self-incrimination.* Only the subsequent use of that testimony—if the government had compelled it at the probation proceeding—at a criminal trial gives rise to a violation. *See Minnesota v. Murphy,* 465 U.S. 420, 435 n. 7, 104 S.Ct. 1136, 1146 n. 7, 79 L.Ed.2d 409 (1984).

ments nonbinding. *See, e.g., United States v. Headrick,* 963 F.2d 777, 781–82 (5th Cir. 1992).

The government, nevertheless, continues to resist that conclusion. It relies on a recent Supreme Court decision, *Williams v. United States,* —— U.S. ——, ——, 112 S.Ct. 1112, 1119–20, 117 L.Ed.2d 341 (1992), in which the Court determined that policy statements were binding. The Court said that, "[w]here, as here, a policy statement prohibits a district court from taking a specified action, the statement is an authoritative guide to the meaning of the applicable guideline." *Id.* at ——, 112 S.Ct. at 1119. In our case, by contrast, we have a policy statement that is independent of (and a conscious substitute for) any Guideline. The government has not suggested why this sort of policy statement should receive the same treatment as the one issued as an interpretation of a formally promulgated Guideline in *Williams.* *See Headrick,* 963 F.2d at 782 (observing that unlike those in *Williams,* Chapter VII policy statements, "stand alone, and in a state of nascency"); *cf. United States v. Dawson,* 990 F.2d 1314, 1316 (D.C.Cir.1993) (Edwards, J., concurring). Whatever weight we give to policy statements explaining Guidelines that the courts must follow, it seems contrary to the Commission's purpose to treat Chapter VII policy statements, which were adopted to preserve the courts' flexibility, as binding. *See United States v. Cohen,* 965 F.2d 58, 60–61 (6th Cir.1992); *United States v. Lee,* 957 F.2d 770, 773–74 (10th Cir.1992) (concluding that the Chapter VII policy statements are not mandatory while expressly noting that those in other chapters of the Guidelines are binding).

The government also claims that any error was harmless. It is argued that in the absence of a mandatory policy statement, the district court would have looked to the applicable statute, 18 U.S.C. § 3565(a), which states that if a defendant is found in possession of a controlled substance, "the court shall revoke the sentence of probation and sentence the defendant to not less than one-third of the original sentence." Putting aside the issue of the appropriate sentence,[3] the statute makes revocation mandatory only if the district court makes a finding that the defendant possessed a controlled substance. While conceding that the district judge did not make that required finding expressly, the government contends that such a finding was implicit in the determination that Hooker violated her probation. The district judge, however, did not identify the specific probation condition that Hooker violated, instead she concluded broadly that Hooker's probation "has been violated," and that "her conduct has not been as good as required by the conditions of probation." Possession of a controlled substance is not a necessary element of a violation of many of Hooker's probation conditions (*e.g.,* not associating with individuals involved in criminal activity). Therefore, we cannot conclude that the district judge made an implicit finding of possession. Such a finding would obligate the judge to revoke probation, while a general finding of a probation violation permits a judge to retain discretion over the revocation decision (and might therefore be preferred). *See* 18 U.S.C. § 3565(a). In any event, without the requisite finding, the government cannot argue that the district court's error was harmless and so we must remand. In

3. Even if 18 U.S.C. § 3565(a) mandated revocation, Hooker may have been harmed by receiving a 12–month sentence. Section 3565(a) states that the district judge must sentence the defendant "to not less than one-third of the original sentence." The circuits are currently split on the meaning of the term "original sentence." *Compare United States v. Clay,* 982 F.2d 959, 962–65 (6th Cir.1993); *United States v. Gordon,* 961 F.2d 426, 430–33 (3d Cir.1992) (defining it as the sentence that could have been imposed initially under the Guidelines) *with United States v. Byrkett,* 961 F.2d 1399, 1400 (8th Cir.1992); *United States v. Corpuz,* 953 F.2d 526, 528–30 (9th Cir.1992) (defining it as the original term of proba-

tion). If the Eighth and Ninth Circuits are correct, then the statute mandates a minimum sentence of only eight months, and so four months of Hooker's sentence cannot be explained away as harmless error. Inexplicably, the government does not urge us to adopt the Third and Sixth Circuit rule (which would produce a statutory minimum of 26 months), but rather incorrectly assumes that the error was harmless under either interpretation of § 3565(a). We need not resolve this question, however, because we decide that the district judge did not make the requisite findings for mandatory revocation under § 3565(a).

reconsidering the revocation of Hooker's probation, the district court should consider, but not feel bound by, the policy statements in Chapter VII.

*So ordered.*