149 F.3d 1198
 331 U.S.App.D.C. 325, 11 Fed.Sent.R. 43
 In re SEALED CASE (SENTENCING GUIDELINES' "SUBSTANTIAL
ASSISTANCE") NO. 97-3112.
 No. 97-3112.
 United States Court of Appeals,
 District of Columbia Circuit.
Argued March 26, 1998.
Decided July 24, 1998.
 
 A.J. Kramer, Federal Public Defender, argued the cause and filed the briefs for appellant.
 Ann Rosenfield, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were Mary Lou Leary, U.S. Attorney [331 U.S.App.D.C. 326] at the time the brief was filed, John R. Fisher and Thomas J. Tourish, Jr., Assistant U.S. Attorneys.
 Before: EDWARDS, Chief Judge, TATEL, Circuit Judge, and BUCKLEY, Senior Circuit Judge.
 TATEL, Circuit Judge:
 
 
 1
 The district court denied appellant's motion for downward departure under section 5K1.1 of the United States Sentencing Guidelines because the Government had not filed a motion attesting to appellant's substantial assistance. Applying Koon v. United States, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), and finding nothing in the Sentencing Guidelines flatly prohibiting departures in the absence of government motions, we remand for the district court to determine whether the circumstances of this case take it out of the relevant heartland so as to warrant departure.
 
 
 2
 * The U.S. Sentencing Guidelines authorize district courts to depart from prescribed sentencing ranges if they find "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into account by the Sentencing Commission." 18 U.S.C. § 3553(b) (1994). The Guidelines also encourage departure under certain specific circumstances. For example, section 5K1.1 provides:
 
 
 3
 Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.
 
 
 4
 U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 5K1.1 (1997). Prior to Koon, we interpreted section 5K1.1 to deprive district courts of authority to depart based on a defendant's assistance in the absence of a government motion. See United States v. Ortez, 902 F.2d 61, 64 (D.C.Cir.1990).
 
 
 5
 Having pleaded guilty to one count of conspiracy to distribute and possession with intent to distribute cocaine, appellant sought downward departure based on his alleged substantial assistance to the government. The district court rejected the request, citing U.S.S.G. § 5K1.1 and the absence of a government motion.
 
 
 6
 On appeal, appellant challenges the district court's decision not to depart on two grounds. First, resurrecting an argument that was presented to us once before but never fully addressed because appellant in that case failed to raise it in district court, see United States v. Dawson, 990 F.2d 1314, 1316-17 (D.C.Cir.1993) (per curiam), appellant challenges section 5K1.1's validity on the grounds that the Commission issued it as a policy statement rather than a guideline. Because this appellant presented the issue to the trial court, we can fully consider its merits. Second, appellant argues that, assuming section 5K1.1's validity, Koon permits departures for substantial assistance even in the absence of a government motion because the factor was not adequately considered by the Commission. Although district court decisions not to depart are usually unreviewable, see United States v. Pinnick, 47 F.3d 434, 439 (D.C.Cir.1995), our review here is de novo because appellant argues that the district court misconstrued its legal authority under the Guidelines, United States v. Sun-Diamond Growers, 138 F.3d 961, 975 (D.C.Cir.1998) ("[W]hether a given factor could ever be a permissible basis for departure is a question of law which we address de novo.") (citing Koon, 518 U.S. at 100, 116 S.Ct. 2035).
 
 II
 
 7
 Guidelines and policy statements differ in several ways. The Sentencing Reform Act of 1984, Pub.L. No. 98-473, 98 Stat. 1987 (codified as amended at 18 U.S.C. §§ 3551-3586, 28 U.S.C. §§ 991-998 (1994)), directs the Commission to promulgate guidelines "for use of a sentencing court in determining the sentence to be imposed." 28 U.S.C. § 994(a)(1). The Act authorizes the Commission to promulgate general policy statements "regarding application of the guidelines or any other aspect of sentencing or sentence implementation that in the view of the Commission would further the purposes of [sentencing]." Id. § 994(a)(2). Guidelines require congressional approval, id. § 994(p); policy statements do not, U.S.S.G. ch. 7, pt. [331 U.S.App.D.C. 327] A, intro. cmt. 3(a). Guidelines establish specific numeric sentence ranges; policy statements usually provide general guidance about the factors that should inform sentencing decisions. Courts must follow guidelines. See Mistretta v. United States, 488 U.S. 361, 367, 391, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). The binding effect of policy statements is less clear. The Supreme Court has called policy statements "authoritative guide[s] to the meaning of the applicable Guideline." Williams v. United States, 503 U.S. 193, 201, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992). But some policy statements are not binding at all. For example, the Guidelines characterize Chapter 7's policy statements as "evolutionary" and designed merely to "provide guidance." U.S.S.G. ch. 7, pt. A, intro. cmt. 1. And we have held that where, as in Chapter 7, a policy statement is "independent of (and a conscious substitute for) any Guideline," it is not binding. United States v. Hooker, 993 F.2d 898, 901 (D.C.Cir.1993).
 
 
 8
 In support of his contention that the Commission should have issued section 5K1.1 as a guideline rather than a policy statement, appellant relies on 28 U.S.C. § 994(n), which states:
 
 
 9
 The Commission shall assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed, including a sentence that is lower than that established by statute as a minimum sentence, to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.
 
 
 10
 28 U.S.C. § 994(n) (emphasis added). According to appellant, because Congress deliberately used the term "guidelines" and "clearly differentiated between guidelines and policy statements," the Commission lacked authority to promulgate a policy statement instead. Citing a contrary Fifth Circuit decision, the Government responds that the statute sometimes uses the term "the guidelines" to refer broadly to the system of guidelines as a whole--policy statements included--and that the Commission therefore had authority to promulgate section 5K1.1 as a policy statement. See United States v. Underwood, 61 F.3d 306, 310 (5th Cir.1995) (construing the term "the guidelines" as used in 28 U.S.C. § 994(n) to refer to the guidelines as a whole and concluding that section 994(n) authorized the promulgation of a policy statement).
 
 
 11
 Because appellant's argument amounts to a challenge to the Commission's interpretation of its authority under the statute to promulgate a policy statement, we proceed as directed by Chevron U.S.A. Inc. v. Natural Resources Defense Council, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). See Stinson v. United States, 508 U.S. 36, 44-45, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) ("The Sentencing Commission promulgates the guidelines by virtue of an express congressional delegation of authority for rulemaking...."); United States v. Doe, 934 F.2d 353, 359 (D.C.Cir.1991) (applying Chevron analysis to Sentencing Guidelines). If the statute is clear, that ends the matter. If the statute is ambiguous, we must defer to the Commission's interpretation as long as it is reasonable. Chevron, 467 U.S. at 842-44, 104 S.Ct. 2778.
 
 
 12
 We begin with the statute's language and structure. Defining the duties of the Commission, section 994 lists purposes for the guidelines and tells the Commission what guidelines and/or policy statements should accomplish. See generally 28 U.S.C. § 994. But section 994 uses the terms "guidelines" and "policy statements" inconsistently. Some subsections refer to "guidelines." Others refer to "guidelines promulgated pursuant to subsection (a)(1)," "guidelines and policy statements," "policy statements," or "policy statements promulgated pursuant to subsection (a)(2)," and it is not at all clear whether Congress intended these terms to be mutually exclusive. For example, three different subsections dealing with the length and conditions of imprisonment use three different terms: Subsection 994(g) begins, "[t]he Commission, in promulgating guidelines pursuant to subsection (a)(1)," id. § 994(g); subsection 994(h) begins, "[t]he Commission shall assure that the guidelines specify," id. § 994(h); and subsection 994(e) begins, "[t]he Commission shall assure that the guidelines and policy statements ... reflect," id. § 994(e). Appellant argues that if, as the Government [331 U.S.App.D.C. 328] contends, "the guidelines" means the system of guidelines as a whole, Congress's use of the words "guidelines and policy statements" would have been redundant because the term "guidelines" would already encompass policy statements. See id. § 994(c), (d), (e). The Government responds that if the term "guidelines" means only those binding sentencing instructions as defined in section 994(a)(1) and always excludes policy statements, Congress's use of the phrase "guidelines promulgated pursuant to subsection (a)(1)" would have been redundant. See id. § 994(b), (f), (g), (l), (y). Each side has a point.
 
 
 13
 Appellant also relies on the statute's definitional section which states: " '[G]uidelines' means the guidelines promulgated by the Commission pursuant to section 994(a) of this title." Id. § 998(c). Section 994(a), in turn, has three subsections: Subsection (a)(1) defines guidelines, subsection (a)(2) defines policy statements, and subsection (a)(3) refers to both. Appellant interprets section 998(c)'s definition to restrict "guidelines" to guidelines as defined in subsection 994(a)(1). The Government, pointing out that Congress knew how to refer to subsection 994(a)(1) when it wanted to, argues that section 998(c)'s reference to section 994(a) encompasses both of its subsections, defining guidelines (subsection 994(a)(1)) as well as policy statements (subsection 994(a)(2)). Again, each side has a point.
 
 
 14
 Because the parties each offer completely plausible interpretations of the statute and its structure, and because the Supreme Court, though acknowledging the distinction between guidelines and policy statements, has never made clear whether the use of the term "guidelines" in section 998(c) excludes policy statements, see Williams, 503 U.S. at 200-01, 112 S.Ct. 1112, we face a classic case of statutory ambiguity, and thus turn to Chevron's second step, see Chevron, 467 U.S. at 843-44, 104 S.Ct. 2778. Given the statute's ambiguity and the Commission's broad authority to promulgate policy statements--not only those that interpret specific guidelines, but "regarding ... any other aspect of sentencing or sentence implementation that in the view of the Commission would further the purposes of [sentencing]," 28 U.S.C. § 994(a)(2)--we have no doubt that the Commission's decision to issue a policy statement rather than a guideline in response to section 994(n) amounted to a permissible, if not the only reasonable, construction of the statute.
 
 
 15
 Appellant argues that since Hooker distinguished between policy statements and guidelines, we cannot now read the term "guideline" so broadly that it includes policy statements. However, Hooker turned not on the distinction between guidelines and policy statements, but on the unique nature of Chapter 7 policy statements themselves. See Hooker, 993 F.2d at 901 (contrasting the freestanding, nonbinding, flexible Chapter 7 policy statements promulgated pursuant to 28 U.S.C. § 994(a)(3), with the binding policy statements in Williams, 503 U.S. at 200, 112 S.Ct. 1112). Appellant suggests that under Hooker, freestanding policy statements like section 5K1.1 are never binding. But this conflicts with Koon's description of several freestanding Chapter 5 policy statements (sections 5H1.4, 5H1.10, 5H1.12, and 5K2.12) as binding, i.e., they contain "factors that never can be bases for departure," Koon, 518 U.S. at 93, 116 S.Ct. 2035; see also United States v. Webb, 134 F.3d 403, 406 (D.C.Cir.1998) (treating a freestanding policy statement--section 5H1.4--as binding, noting that even though the "directive is in the form of a 'policy statement' rather than a 'guideline,' it is still 'an authoritative guide' for a court contemplating a departure from the Guidelines") (quoting Williams, 503 U.S. at 200, 112 S.Ct. 1112).
 
 III
 
 16
 This brings us to appellant's alternative argument that even without a government motion, district courts can depart based on substantial assistance in unusual cases. Although the Supreme Court has twice addressed the substantial assistance motion requirement, see Melendez v. United States, 518 U.S. 120, 130-31, 116 S.Ct. 2057, 135 L.Ed.2d 427 (1996) (government motion under section 5K1.1 for departure below Guidelines' range does not also permit departure below the statutory minimum under 18 U.S.C. § 3553(e)); Wade v. United States, [331 U.S.App.D.C. 329] 504 U.S. 181, 185-86, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992) (district court may review for unconstitutional motivation government decision not to file motion), it has never decided whether departure might be appropriate when the government has not filed a motion under section 5K1.1.
 
 
 17
 District courts may depart based on circumstances "not adequately taken into consideration" by the Commission, 18 U.S.C. § 3553(b), and as Koon explains, the Guidelines list very few factors that courts absolutely cannot use to depart, see Koon, 518 U.S. at 93, 116 S.Ct. 2035 (listing forbidden factors as "race, sex, national origin, creed, religion, socio-economic status, 1995 U.S.S.G. § 5H1.10; lack of guidance as a youth, § 5H1.12; drug or alcohol dependence, § 5H1.4; and economic hardship, § 5K2.12"); United States v. Rhodes, 145 F.3d 1375, 1378-79 (D.C.Cir.1998). If the proposed departure factor is not prohibited, courts may depart, although the precise departure inquiry depends on whether the factor is encouraged, discouraged, or unmentioned. See Koon, 518 U.S. at 96, 116 S.Ct. 2035; Rhodes, 145 F.3d at 1381-82. If the factor is encouraged, courts can depart only "if the applicable Guideline does not already take it into account." Koon, 518 U.S. at 96, 116 S.Ct. 2035. If the factor is discouraged, or encouraged but has already been taken into account in an applicable guideline, courts can depart "only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." Id. If the factor is unmentioned, courts must, "after considering the 'structure and theory of both relevant individual guidelines and the Guidelines taken as a whole,' decide whether [the factor] is sufficient to take the case out of the Guideline's heartland." Id. (quoting United States v. Rivera, 994 F.2d 942, 949 (1st Cir.1993)).
 
 
 18
 Applying Koon to this case, we begin with the obvious: The circumstance under which appellant seeks departure is not prohibited. Nowhere do the Guidelines state that courts cannot depart based on substantial assistance in the absence of a government motion. Compare U.S.S.G. § 5K1.1 ("Upon motion of the government ... the court may depart ....") (emphasis added), with id. § 5H1.10 (stating that race, sex, national origin, creed, religion, and socio-economic status "are not relevant in the determination of a sentence").
 
 
 19
 But clarity ends here because the circumstances of this case do not fit neatly into Koon's remaining encouraged/discouraged/unmentioned categories. The Guidelines encourage substantial assistance departures with a government motion but not without such a motion. Indeed, the Guidelines nowhere expressly address substantial assistance without a government motion. The Government argues that the very existence of a government motion requirement implicitly discourages departures without such a motion. But unlike other policy statements that explicitly discourage consideration of factors such as age, education, or family circumstances, see id. §§ 5H1.1, 5H1.2, 5H1.6, the Guidelines nowhere expressly discourage departures based on "substantial assistance without a government motion," even though the Commission could easily have done so. Just because the filing of a government motion makes substantial assistance an encouraged ground does not mean the government's failure to file such a motion transforms substantial assistance--a factor Congress expressly injected into the sentencing decision-making process, see 28 U.S.C. § 994(n)--into a discouraged ground.
 
 
 20
 Appellant argues that since the Guidelines neither encourage nor discourage consideration of substantial assistance without a government motion, we should view it as unmentioned. Koon, adopting the First Circuit's analysis in Rivera, coined the term "unmentioned" to refer to the class of unusual factors not " 'adequately' " considered by the Commission. See Koon, 518 U.S. at 96, 116 S.Ct. 2035 (quoting Rivera, 994 F.2d at 949); see also id. (noting that unmentioned factors will be " 'highly infrequent' ") (quoting U.S.S.G. ch. 1, pt. A, intro. cmt. 4(b)(describing general departure authority)). Rivera explained that although the Guidelines identify some encouraged and discouraged factors, the Guidelines themselves recognize that departure factors " 'cannot, by their very nature, be comprehensively listed and analyzed in advance.' " Rivera, 994 F.2d at 949 (quoting U.S.S.G. § 5K2.0). District courts will [331 U.S.App.D.C. 330] therefore often have to decide for themselves whether a case involves unusual factors not adequately considered by the Commission.
 
 
 21
 It is not always easy to determine whether a particular factor (here, substantial assistance without a government motion) that seems related to a factor mentioned in the Guidelines (substantial assistance with a motion) has or has not been adequately taken into account. Koon makes clear, however, that factors mentioned in the Guidelines should be interpreted precisely. Rejecting the Ninth Circuit's conclusion that the Guidelines' prohibition on consideration of socioeconomic status precluded consideration of job loss, Koon said that "[a]lthough an impermissible factor need not be invoked by name to be rejected, socioeconomic status and job loss are not the semantic or practical equivalent of each other." Koon, 518 at 110, 116 S.Ct. 2035. Two First Circuit cases take a similarly precise approach. In one, the court found that the Guidelines' designation of vocational skills as a discouraged factor did not bar consideration of two related factors, i.e., business failure and job loss. See United States v. Olbres, 99 F.3d 28, 35 (1st Cir.1996). In the other case, the court treated "assistance to the judicial system" (in the form of an early plea agreement saving time and judicial resources) as unmentioned by section 5K1.1 because assisting the judiciary differs both conceptually and practically from assisting the prosecution. See United States v. Dethlefs, 123 F.3d 39, 45 (1st Cir.1997). By comparison, we held in Rhodes that postconviction rehabilitation, though neither expressly encouraged nor discouraged as a departure basis, is nevertheless "taken into account" because the Guidelines refer to the broader concept of post-offense rehabilitation, Rhodes, 145 F.3d at 1383, "a concept linguistically broad enough to cover post-conviction rehabilitation," id. at 1382-83.
 
 
 22
 From these cases, the following standard emerges: Where a proposed departure factor amounts either to the semantic or practical equivalent of an explicitly mentioned factor or to a completely covered subset of an explicitly mentioned factor, that factor has been accounted for in the Guidelines. Where, however, the factor has no equivalent or substitute in the Guidelines and no mentioned factor encompasses it, that factor has not been adequately considered. This standard, in addition to comporting with the case law, ensures that courts remain faithful to the Guidelines. The Commission carefully delineated encouraged and discouraged factors. See Koon, 518 U.S. at 106-09, 116 S.Ct. 2035 (judicial preclusion of consideration of nonforbidden factors would usurp the Commission's policy making role). The Commission itself has described its guideline promulgation process as evolutionary and its role "over time [to] ... refine the guidelines to specify more precisely when departures should and should not be permitted." U.S.S.G. ch. I, pt. A, intro. cmt. 4(b). Courts should therefore not extend Guideline categories to answer questions the Commission may have left for another day. See Olbres, 99 F.3d at 35 ("[C]ourts should be careful not to construe the categories covered by the Guidelines' factors too broadly....").
 
 
 23
 Applying this standard to the facts of this case, and considering "the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission," 18 U.S.C. § 3553(b), we agree with appellant that a substantial assistance departure without a government motion is neither encompassed by nor equivalent to any mentioned, encouraged, or discouraged factor, and was thus not adequately considered by the Commission. Substantial assistance without a government motion is certainly not a "semantic or practical equivalent" of substantial assistance with a motion, Koon, 518 U.S. at 110, 116 S.Ct. 2035. Nor is section 5K1.1 "linguistically broad enough" to account for a substantial assistance departure without a government motion, Rhodes, 145 F.3d at 1382-83. Indeed, the departure factors at issue in this case differ more sharply than those at issue in Koon, Olbres, and Dethlefs: socioeconomic status versus job loss (Koon), vocational skills versus business failure (Olbres), and assistance to the government-as-prosecutor versus assistance to the government-as-judiciary (Dethlefs). Although these latter factors have at least some conceptual overlap, the factors at issue here--substantial assistance with a government motion versus substantial assistance without one--stand as polar opposites. In fact, where the government files no motion, section 5K1.1 [331 U.S.App.D.C. 331] does not even apply. Section 5K1.1 thus cannot be viewed as adequate consideration of substantial assistance without a government motion, particularly since 28 U.S.C. § 994(n) explicitly directed the Commission to assure that the guidelines reflect the general appropriateness of lesser sentences for defendants who substantially assist the prosecution.
 
 
 24
 We therefore conclude that even where the government files no motion, Koon authorizes district courts to depart from the Guidelines based on a defendant's substantial assistance where circumstances take the case out of the relevant guideline heartland. Insofar as this contradicts our holding in Ortez that district courts lack authority to consider substantial assistance absent a government motion, Koon effectively overrules that aspect of Ortez. As Koon directs, we leave it to the district court to define the "heartland" for a particular case. See Koon, 518 U.S. at 98-99, 116 S.Ct. 2035; Rhodes, 145 F.3d at 1383.
 
 
 25
 This case is remanded for possible re-sentencing in light of this opinion.
 
 
 26
 So ordered.