**UNITED STATES of America,**
**Appellee,**

v.

**Floyd BRUCE, Appellant.**

**No. 01–3098.**

United States Court of Appeals,
District of Columbia Circuit.

Argued March 15, 2002.

Decided April 5, 2002.

A.J. Kramer, Federal Public Defender, argued the cause for the appellant.

Suzanne Grealy Curt, Assistant United States Attorney, argued the cause for the appellee. Roscoe E. Howard, Jr., United States Attorney, and John R. Fisher, Elizabeth Trosman, Thomas E. Zeno and Joan Draper, Assistant United States Attorneys, were on brief.

Before: SENTELLE, HENDERSON and TATEL, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

The appellant, Floyd Bruce, seeks reversal of the district court's July 30, 2001 sentencing decision, *see* App. of Appellant at 143–98, in which the court concluded that the policy statements contained in Chapter 7 of the United States Sentencing Guidelines (U.S.S.G.) are not binding upon sentencing courts. Bruce contends, simply, that the court erred in so holding and that we should remand for resentencing. We disagree.

## I.

In December 1994 a grand jury issued a two-count indictment against Bruce, charging him with bank fraud, in violation of 18 U.S.C. § 1344 (Count One), and with uttering and possessing forged securities of an organization, in violation of 18 U.S.C. § 513(a) (Count Two). In February 1995 the petit jury found Bruce guilty on both counts. The district court sentenced him to a term of 24 months' imprisonment, which was to be followed by three years of supervised release. Bruce appealed his conviction and we affirmed. *See United States v. Bruce*, 89 F.3d 886 (D.C.Cir. 1996).

Bruce served his time and was released on August 28, 1996; accordingly, he was to remain on supervised release until August 27, 1999. On October 7, 1997 the Probation Office notified the district court that Bruce had violated his release conditions because he had been arrested twice in New York for motor vehicle violations, had twice tested positive for marijuana and had failed to make restitution payments. The district court found that Bruce had indeed violated his release conditions; it therefore extended his supervised release period by one year—to end on August 27, 2000—and ordered him to serve a 90–day period of monitored home confinement, to partici-

pate in a drug aftercare program and to make monthly restitution payments.

On January 22, 1998 and March 26, 1998 the Probation Office forwarded reports to the district court advising it that Bruce had once again violated his release conditions by (1) being arrested for and charged with larceny in New York in October 1997; (2) failing to notify his probation officer of the arrest; (3) failing to make restitution payments as ordered; (4) failing to attend drug counseling as ordered; (5) failing to adjust his telephone service to accommodate electronic monitoring as ordered; (6) being arrested yet again in New York for forgery, possession of a forged instrument and possession of stolen property; (7) failing to notify his probation officer of the arrest; and (8) making false statements to his probation officer that he is a United States citizen.

After Bruce failed to appear at a June 2, 1998 hearing, the district court issued a warrant for his arrest. Bruce remained a fugitive until he was arrested on October 26, 2000 in Blue Ash, Ohio, where he was indicted in state court on several counts of theft, possessing criminal tools and receiving stolen property. He was returned to the District of Columbia and brought into custody on January 10, 2001 pursuant to the district court's warrant. At a July 2001 status hearing Bruce told the district court that he did not wish to contest the eight supervised release violations alleged by the government and that he preferred to proceed to resentencing.

At his July 30 resentencing hearing, Bruce waived his right to contest the violations. The parties did not dispute (1) that by statute, the maximum sentence of imprisonment the court could impose for the violations was 36 months, *see* 18 U.S.C. § 3583(e)(3) (a "defendant whose [supervised release] term is revoked under this paragraph may not be required to serve

... more than 3 years in prison if [his] offense [of conviction] is a class B felony"); or (2) that the sentence provided in Chapter 7 for a defendant (like Bruce) with a criminal history of category II was six to 12 months, see U.S.S.G. § 7B1.4. The parties did argue, however, about whether Chapter 7 is binding upon the district court. Bruce contended ˙ that a 1994 amendment to 18 U.S.C. § 3553 had rendered Chapter 7's policy statements mandatory; thus, he claimed that the court was obligated to sentence him within the six– to 12–month range. The government argued that the amendment effected no such change in the law and that the court was free to impose a sentence of up to 36 months under section 3583(e)(3).

The district court concluded that Chapter 7's policy statements are not binding. The court based its decision, first, upon our pre–1994 holding in *United States v. Hooker*, 993 F.2d 898 (D.C.Cir.1993), that the policy statements are not mandatory and, second, upon several post–1994 circuit court decisions concluding that the policy statements—even *after* the amendment to 18 U.S.C. § 3553—remain non-binding. The court, therefore, held that it could impose a sentence of up to 36 months' incarceration for Bruce's uncontested supervised release violations but sentenced him instead to 24 months, finding that it would be "to a certain extent illogical" to sentence him to "a period of time that exceeds what he was sentenced to originally." App. of Appellant at 196. Bruce timely filed a notice of appeal.

## II.

Bruce claims that the district court erred in sentencing him to a prison term of 24 months by declining to follow U.S.S.G. § 7B1.4's revocation table. He argues that the supervised release policy statements contained in Chapter 7—section

7B1.4 included—are binding on the district court and that he should have received only six to 12 months. As noted above, we held in *Hooker* that "the Chapter VII policy statements themselves are merely advisory." *Hooker*, 993 F.2d at 900. Accordingly, the sole legal issue before us is whether, as Bruce contends, the Congress's post-*Hooker* amendment to 18 U.S.C. § 3553(a) rendered the policy statements mandatory. Addressing that issue *de novo*, *see United States v. Yeh*, 278 F.3d 9, 13 (D.C.Cir.2002), we hold that it did not.

In 1990 the United States Sentencing Commission (Commission) promulgated Chapter 7's policy statements pursuant to its authority to prescribe "guidelines or general policy statements regarding the appropriate use of the provisions for ... modification of the term or conditions of supervised release and revocation of supervised release set forth in section 3583(e) of title 18." 28 U.S.C. § 994(a)(3). The Commission made clear that "[a]fter considered debate" it had decided to promulgate only policy statements—not guidelines—with respect to supervised release revocation. U.S. Sentencing Guidelines Manual ch. 7, pt. A, introductory cmt. (2001). It believed that "this approach [would] provide[ ] greater flexibility to both the Commission and the courts" and that "the additional time to consider complex issues relating to revocation guidelines ... [would] provide better opportunities for evaluation." *Id.* The Commission also advised that it "intend[ed] to promulgate revocation guidelines" after "an adequate period of evaluation." *Id.* It has yet to do so.

At the time *Hooker* was decided, 18 U.S.C. § 3553 ("**Imposition of a sentence**") provided, in pertinent part:

(a) **Factors to be *considered* in imposing a sentence.**—The court shall impose

a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection [including such purposes as deterrence, incapacitation and rehabilitation]. The court, in determining the particular sentence·to be imposed, shall *consider* ...

(4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines that are issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(1)[1] and that are in effect on the date the defendant is sentenced;

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2)[2] that is in effect on the date the defendant is sentenced; ...

(b) Application of *guidelines* in imposing a sentence.—The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall *consider* only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). *In the absence of an applicable sentencing guideline* in the case of an offense other than a petty offense, the court shall also have *due regard for* the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to *the applicable policy statements* of the Sentencing Commission.

18 U.S.C. § 3553 (1988) (emphases added).

In 1994, after *Hooker*, the Congress amended section 3553 by dividing subsection (a)(4) into two parts as follows:

(a) Factors to be *considered* in imposing a sentence. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection [including such purposes as deterrence, incapacitation and rehabilitation]. The court, in determining the particular sentence to be imposed, shall *consider* ...

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the *guidelines* issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the

---

**1.** Section 994(a)(1) provides that the Commission has the authority to promulgate "guidelines ... for use of a sentencing court in determining the sentence to be imposed in a criminal case." 28 U.S.C. § 994(a)(1).

**2.** Section 994(a)(2) provides that the Commission has the authority to promulgate "general policy statements regarding application of the guidelines or any other aspect of sentencing or sentence implementation that in the view of the Commission would further [sentencing] purposes." 28 U.S.C. § 994(a)(2).

applicable *guidelines or policy statements* issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code; . . .

18 U.S.C. § 3553(a) (emphases added). Subsection (b) ("**Application of guidelines in imposing a sentence**") remained unchanged after the 1994 amendment.

Bruce's syllogistic argument proceeds as follows: first, section 3553(b) requires the district court to "impose a sentence of the kind and within the range referred to in subsection (a)(4)"; second, after *Hooker*, subsection (a)(4) was amended to include reference to "applicable guidelines *or policy statements* issued by the Sentencing Commission" for supervised release violations; therefore, in amending (a)(4), the Congress was announcing that a district court *must* impose a sentence for a supervised release violation within the range provided by the Commission, whether that range is set forth in a guideline *or* a policy statement. As Bruce candidly acknowledges, all of the circuits that have considered the issue before us have "unanimously rejected his position," Br. of Appellant at 18, holding that the 1994 amendment did not render Chapter 7's policy statements binding on sentencing courts. *See United States v. Brown*, 203 F.3d 557, 558 (8th Cir.2000) (per curiam); *United States v. George*, 184 F.3d 1119, 1120–22 (9th Cir.1999); *United States v. Schwegel*, 126 F.3d 551, 552–55 (3d Cir.1997) (per curiam); *United States v. Cohen*, 99 F.3d 69, 70–71 (2d Cir.1996) (per curiam), *cert. denied*, 520 U.S. 1213, 117 S.Ct. 1699, 137 L.Ed.2d 825 (1997); *United States v. Hofierka*, 83 F.3d 357, 360–61 (11th Cir.1996) (per curiam), *cert. denied*, 519 U.S. 1071, 117 S.Ct. 717, 136 L.Ed.2d 636 (1997); *United States v. Escamilla*, 70 F.3d 835, 835 (5th Cir.1995) (per curiam), *cert. denied*, 517 U.S. 1127, 116 S.Ct. 1368, 134 L.Ed.2d 533 (1996); *United States v. West*, 59 F.3d 32, 33–36 (6th Cir.), *cert. denied*, 516 U.S. 980, 116 S.Ct. 486, 133 L.Ed.2d 413 (1995). Because Bruce's logic finds no support in the statutory text, we decline to break rank with our sister circuits.

The plain language of section 3553(a) merely states that a district court must "*consider* . . . the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3)" when imposing a sentence for a violation of supervised release. 18 U.S.C. § 3553(a)(4)(B) (emphasis added). To "consider" means to "reflect on," "think about," "deliberate," "ponder" or "study." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED 483 (1993). It does not mean to "adhere to," "be bound by" or "follow."

Turning to section 3553(b), one sees that it unambiguously requires a sentencing court to "impose a sentence of the kind, and within the range, referred to in subsection (a)(4)." 18 U.S.C. § 3553(b). Bruce contends that because subsection (a)(4)—specifically (a)(4)(B)—now references policy statements, sentencing courts must adhere to those statements by virtue of section 3553(b)'s mandate. His interpretation is not entirely implausible; while our sister circuits all appear to agree that the purpose of the 1994 amendment was "to clarify that resentencing for probation and supervised release violations should be based upon sentencing guidelines and policy statements issued by the Commission specifically for that purpose, rather than upon the guidelines applicable to . . . the original offense," *George*, 184 F.3d at 1121–22 (quoting *Schwegel*, 126 F.3d at 554) (internal quotations omitted), the Congress could have made its aim somewhat clearer textually. Indeed, as Bruce suggested at oral argument, it could have amended section 3553(b) to require imposition of "a sentence of the kind, and within

the range, referred to in subsection (a)(4)(A) [as opposed to (a)(4) ]," thus requiring—explicitly—application of the guidelines but only consideration of the policy statements. The "Congress-could-have" argument, however, works as much to Bruce's detriment as it does to his advantage. As its heading suggests, section 3553(b) pertains to "[a]pplication of [the] *guidelines*" and only asks a court to "consider" or have "due regard for" the "applicable policy statements" in "the *absence* of an applicable sentencing guideline." 18 U.S.C. § 3553(b) (emphasis added). Thus, as the Second Circuit has put it, "[a]bsent any applicable guidelines in Chapter 7, § 3553(b)'s mandatory language does not apply." *Cohen*, 99 F.3d at 71 (citing *West*, 59 F.3d at 35). Without much difficulty, the Congress *could have* amended 3553(b) to *require* adherence to policy statements. It did not; accordingly, we are left with a statute that plainly requires a district court to apply guidelines (where they exist) but merely consider (i.e., "reflect on," "think about," "deliberate," "ponder" or "study") policy statements.

Bruce resists this conclusion, claiming that "it is not at all clear whether Congress intended the term 'guidelines' [in section 3553(b) ] to exclude policy statements." Br. of Appellant at 19. For several reasons, we disagree. First, in mutually exclusive terms, section 994(a)(3) of title 28 requires the Commission to promulgate "guidelines *or* general policy statements regarding the appropriate use of the provisions for . . . modification of the term or conditions of supervised release and revocation of supervised release set forth in section 3583(e) of title 18." 28 U.S.C. § 994(a)(3) (emphasis added). Second, pursuant to that responsibility, the Commission chose to promulgate non-binding policy statements to preserve the "flexibility [of] both the Commission and the courts" until the Commission had sufficient time to evaluate fully the "complex issues relating to revocation *guidelines*." U.S. Sentencing Guidelines Manual ch. 7, pt. A, introductory cmt. (2001) (emphasis added). Significantly, in the several years since the 1994 amendment—during which time the courts have repeatedly rejected Bruce's theory—neither the Congress nor the Commission has done anything to call into question the Commission's initial decision to prescribe policy statements in lieu of guidelines. Until one or both of them do so, we will not disturb the discretion of the district court to sentence a supervised release violator in a manner consistent with 18 U.S.C. § 3583(e).

### III.

The district court sentenced Bruce to 24 months' incarceration, a term which is well within the statutory limit. *See* 18 U.S.C. § 3583(e)(3). Because we conclude that the court's discretion was not otherwise restricted, we affirm its resentencing of Bruce.

*So ordered.*