KAVANAUGH, Circuit Judge,
concurring in the judgment:
May the U.S. Government require an imported Chinese-made product to be labeled “Made in China”? For many readers, the question probably answers itself: Yes. This case requires us to explain why that is so, in particular why such a requirement passes muster under the First Amendment. The precise First Amendment issue before us concerns a federal law that requires country-of-origin labels for meat and other food products. Country-of-origin labels are of course familiar to American consumers. Made in America. Made in Mexico. Made in China. And so on. For many decades, Congress has mandated such country-of-origin labels for a variety of products. I agree with the majority opinion that the First Amendment does not bar those longstanding and commonplace country-of-origin labeling requirements.
As a starting point, all agree that the First Amendment imposes stringent limits on the Government’s authority to either restrict or compel speech by private citizens and organizations. See Texas v. Johnson, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989); Wooley v. Maynard, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977); West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). This case involves commercial speech. The First Amendment protects commercial speech, and regulations of commercial speech are analyzed under the Supreme Court’s Central Hudson framework. To justify laws regulating commercial speech, the Government must (i) identify a substantial governmental interest and (ii) demonstrate a sufficient fit between the law’s require *31 ments and that substantial governmental interest. See Central Hudson Gas & Electric Corp. v. Public Service Commission of New York, 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).
I will address in turn how those two basic Central Hudson requirements apply to this case.
First, under Central Hudson, the Government must identify a substantial governmental interest that is served by the law in question. Since its decision in Central Hudson, the Supreme Court has not stated that something less than a “substantial” governmental interest would justify either a restriction on commercial speech or a compelled commercial disclosure. And likewise, the majority opinion today does not say that a governmental interest that is less than substantial would suffice to justify a compelled commercial disclosure.
What interests qualify as sufficiently substantial to justify the infringement on the speaker’s First Amendment autonomy that results from a compelled commercial disclosure? Here, as elsewhere in First Amendment free-speech law, history and tradition are reliable guides. See Brown v. Entertainment Merchants Association, — U.S. -, 131 S.Ct. 2729, 2734, 180 L.Ed.2d 708 (2011) (“a long (if heretofore unrecognized) tradition of proscription” may sometimes justify restrictions on speech); Republican Party of Minnesota v. White, 536 U.S. 765, 785, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002) (“It is true that a universal and long-established tradition of prohibiting certain conduct creates a strong presumption that the prohibition is constitutional.”) (internal quotation marks omitted); Burson v. Freeman, 504 U.S. 191, 200-06, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992) (plurality opinion) (history of state restrictions on electioneering supported conclusion that such a restriction was necessary to serve state’s compelling interests); see also McIntyre v. Ohio Elections Commission, 514 U.S. 334, 375-78, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995) (Scalia, J., dissenting) (“Where the meaning of a constitutional text (such as ‘the freedom of speech’) is unclear, the widespread and long-accepted practices of the American people are the best indication of what fundamental beliefs it was intended to enshrine.”). The Government has long required commercial disclosures to prevent consumer deception or to ensure consumer health or safety. Those interests explain and justify the compelled commercial disclosures that are common and familiar to American consumers, such as nutrition labels and health warnings. See, e.g., R.J. Reynolds Tobacco Co. v. FDA, 696 F.3d 1205, 1211 (D.C.Cir.2012) (noting that there was no dispute about Congress’s authority to require health warnings on cigarette packages).
But the Government cannot advance a traditional anti-deception, health, or safety* interest in this case because a country-of-origin disclosure requirement obviously does not serve those interests. Rather, the Government broadly contends that it has a substantial interest in “providing consumers with information.” Tr. of Oral Arg. at 41. For Central Hudson purposes, however, it is plainly not enough for the Government to say simply that it has a substantial interest in giving consumers information. After all, that would be true of any and all disclosure requirements. That circular formulation would drain the Central Hudson test of any meaning in the context of compelled commercial disclosures. See R.J. Reynolds, 696 F.3d at 1221. Not surprisingly, governments (federal, state, and local) would love to have such a free pass to spread their preferred messages on the backs of others. But as the Second Circuit has stated, “Were consumer interest alone sufficient, there is no end to the information that states could *32 require manufacturers to disclose about their production methods.” International Dairy Foods Association v. Amestoy, 92 F.3d 67, 74 (2d Cir.1996). Some consumers might want to know whether their U.S.-made product was made by U.S. citizens and not by illegal immigrants. Some consumers might want to know whether a doctor has ever performed an abortion. Some consumers might want to know the political affiliation of a business’s owners. These are not far-fetched hypotheticals, particularly at the state or local level. Do such consumer desires suffice to justify compelled commercial disclosures of such information on a product or in an advertisement? I think not, and history and tradition provide no support for that kind of free-wheeling government power to mandate compelled commercial disclosures. I agree with this Court’s rejection of such an undifferentiated governmental interest in R.J. Reynolds. And I agree with the Second Circuit’s statement in Amestoy that “consumer curiosity alone is not a strong enough state interest” to sustain a compelled commercial disclosure. Id. The majority opinion today properly does not embrace the Government’s broad argument.
Although the Government’s broad argument is meritless, country-of-origin labeling is justified by the Government’s historically rooted interest in supporting American manufacturers, farmers, and ranchers as they compete with foreign manufacturers, farmers, and ranchers. Since the early days of the Republic, numerous U.S. laws have sought to further that interest, sometimes overtly and sometimes subtly. Although economists debate whether various kinds of protectionist legislation help U.S. consumers and the overall U.S. economy, there is no doubt that Congress has long sought to support and promote various U.S. industries against their foreign competition. How is that interest implicated by country-of-origin labeling? Country-of-origin labeling, it is widely understood, causes many American consumers (for a variety of reasons) to buy a higher percentage of American-made products, which in turn helps American manufacturers, farmers, and ranchers as compared to foreign manufacturers, farmers, and ranchers. That is why Congress has long mandated country-of-origin disclosures for certain products. See, e.g., United States v. Ury, 106 F.2d 28, 29 (2d Cir.1939) (purpose of early country-of-origin labeling requirements “was to apprise the public of the foreign origin and thus to confer an advantage on domestic producers of competing goods”). That historical pedigree is critical for First Amendment purposes and demonstrates that the Government’s interest here is substantial. The majority opinion properly relies on the history of country-of-origin labeling laws as a basis for finding that the Government has a substantial interest in this case.
That said, one wrinkle in this case is whether the Government has actually asserted an interest in supporting American farmers and ranchers in order to justify this country-of-origin labeling requirement for meat and other food products. Whether the Government has asserted such an interest matters because Central Hudson requires that the Government articulate the interests it seeks to advance. See Edenfield v. Fane, 507 U.S. 761, 768, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993). And the Executive Branch has refrained during this litigation from expressly articulating its clear interest in supporting American farmers and ranchers in order to justify this law, apparently because of the international repercussions that might ensue. But the interest here is obvious, even if unarticulated by the Executive Branch for reasons of international comity. And more to the point for Central Hudson purposes, Members of Congress did articulate the *33 interest in supporting American farmers and ranchers when Congress enacted this country-of-origin labeling law. See, e.g., 148 Cong. Rec. 5492-93, 6884-85 (2002); see also id. at 1181. And Congress’s articulation of the interest suffices under Central Hudson. Cf. Turner Broadcasting System, Inc. v. FCC, 512 U.S. 622, 662, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994) (looking to statutory findings and legislative history to discern the governmental interests served); Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 493, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (plurality opinion) (looking to text of city’s ordinance to discern the governmental interests served).
In short, the Government has a substantial interest in this ease in supporting American farmers and ranchers against their foreign competitors.
The second question under Central Hudson concerns the fit between the disclosure requirement and the Government’s interest — as plaintiff AMI succinctly puts it, whether the disclosure requirement is “tailored in a reasonable manner.” AMI Supplemental Br. at 16 (quoting Edenfield, 507 U.S. at 767, 113 S.Ct. 1792); see also National Association of Manufacturers v. SEC, 748 F.3d 359, 372 (D.C.Cir.2014) (“must be a reasonable fit between means and ends” under Central Hudson) (internal quotation marks omitted).
As I read it, the Supreme Court’s decision in Zauderer applied the Central Hudson “tailored in a reasonable manner” requirement to compelled commercial disclosures. At the outset of its opinion, the Zauderer Court described the general Central Hudson framework- in detail. And then the Court stated: “we must apply the teachings of these cases,” including Central Hudson, to the three separate state regulations of attorney advertising at issue, including “disclosure requirements relating to the terms of contingent fees.” Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio, 471 U.S. 626, 638, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985). In applying the teachings of Central Hudson to the state disclosure requirement, the Zauderer Court required that such mandatory disclosures be “purely factual,” “uncontroversial,” not “unduly burdensome,” and “reasonably related to” the Government’s interest. Id. at 651, 105 S.Ct. 2265. So Zauderer is best read simply as an application of Central Hudson, not a different test altogether. In other words, Zauderer tells us what Central Hudson’s “tailored in a reasonable manner” standard means in the context of compelled commercial disclosures: The disclosure must be purely factual, uncontroversial, not unduly burdensome, and reasonably related to the Government’s interest.[1]
It is important to underscore that those Zauderer fit requirements are far more stringent than mere rational basis review. When the Supreme Court applies rational basis review, it does not attach a host of requirements of the kind prescribed by Zauderer. Rational basis review is ex *34 tremely deferential and in this context would undoubtedly tolerate government mandates of moral or policy-laden messages, of controversial messages, of burdensome labels, of disclosures that are only indirectly related to the Government’s interests. Zauderer tolerates none of that. Zauderer tightly limits mandatory disclosures to a very narrow class that meets the various Zauderer requirements. So to the extent that some courts, advocates, and commentators have portrayed a choice between the “tough Central Hudson standard” and the “lenient Zauderer standard,” I see that as a false choice. As I read it, Zauderer applied and elaborated on Central Hudson’s “tailored in a reasonable manner” requirement and established a demanding set of requirements that the Government must meet to justify a compelled commercial disclosure. The majority opinion properly does not equate Zau-derer to mere rational basis review and properly insists that the mandatory disclosure here must meet all of the various Zauderer requirements. And the majority opinion and I agree on the following: To justify a compelled commercial disclosure, assuming the Government articulates a substantial governmental interest, the Government must show that the disclosure is purely factual, uncontroversial, not unduly burdensome, and reasonably related to the Government’s interest.[2]
In this case, as the majority opinion properly concludes, those stringent Zau-derer fit requirements are met. The country-of-origin labeling requirement at issue here is purely factual, is not unduly burdensome, and as explained above is reasonably related to the Government’s longstanding interest in supporting American farmers and ranchers. To be sure, determining whether a disclosure is “uncontroversial” may be difficult in some compelled commercial speech cases, in part because it is unclear how we should assess and what we should examine to determine whether a mandatory disclosure is controversial. But regardless of how the “uncontroversial” requirement might play out in other cases, the issue poses little difficulty here. Unlike the mandated disclosures at issue in R.J. Reynolds or National Association of Manufacturers, for example, a country-of-origin label cannot be considered “controversial” given the factually straightforward, evenhanded, and readily understood nature of the information, as well as the historical pedigree of this specific kind of disclosure requirement. Cf. National Association of Manufacturers, 748 F.3d at 371 (disclosure requirement that in essence compelled “an issuer to confess blood on its hands”); R.J. Reynolds, 696 F.3d at 1216-17 (disclosure requirements that compelled the display of “inflammatory im *35 ages” and constituted “unabashed attempts to evoke emotion” and “browbeat customers”).
For those reasons, I would uphold this country-of-origin labeling requirement. As I read it, the majority opinion is consistent with my analysis. But I thought it important to spell out each step of my analysis in greater detail. Bottom line: I agree with the majority opinion that we should affirm the judgment of the District Court.

. To state what is probably obvious, the compelled disclosure must be a disclosure about the product or service in question to be justified under Central Hudson and Zauderer. The First Amendment does not tolerate a government effort to compel disclosures unrelated to the product or service — for example, a compelled disclosure on all food packages (not just cigarette packages) that cigarette smoking causes cancer. The majority opinion, as I read it, agrees with that principle. See Maj. Op. at 26 ("Of course to match Zauderer logically, the disclosure mandated must relate to the good or service offered by the regulated party:...”); see also Zauderer v, Office of Disciplinary Counsel of Supreme Court, of Ohio, 471 U.S. 626, 651, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985) (state required an attorney’s advertising to disclose "information about the terms under which his services will be available”).

. Although I agree with the results and most of the reasoning of R.J. Reynolds and National Association of Manufacturers, I disagree with those cases’ description of Zauderer as mere rational basis review. See National Association of Manufacturers v. SEC, 748 F.3d 359, 370-71 (D.C.Cir.2014) (characterizing Zauderer as "rational basis review”); R.J. Reynolds Tobacco Co. v. FDA, 696 F.3d 1205, 1212 (D.C.Cir.2012) (Zauderer review is "akin to rational-basis review”). That description- of Zauderer in turn led those cases to apply the Central Hudson test rather than the Zauderer test to the compelled commercial disclosures at issue in those cases. To reiterate, however, I see the choice between Zauderer and Central Hudson as a false choice because it is based on a mistaken premise, in my view. Zauderer applied Central Hudson’s fit prongs to this compelled commercial speech context and set forth a variety of stringent requirements far more demanding than mere rational basis review. The majority opinion today properly recognizes that Zauderer did not embrace mere rational basis review, and the majority opinion thus disavows that aspect of RJ. Reynolds and National Association of Manufacturers without disturbing the results of those cases.
*37 Policy Statement on En Banc Endorsement of Panel Decisions at 1 (Jan. 17, 1996); see also In re Sealed Case, 181 F.3d 128, 145-46 (D.C.Cir.1999) (Henderson, J., concurring). The only justification that might conceivably apply here is the second — but given the RJ. Reynolds majority’s repeated emphasis on Zauderer’s deception limitation, I do not see how it qualifies as even "arguably dictum.” While a panel retains discretion to "determine that a statement in a prior decision was dictum, not requiring en banc action to reject,” id. at 2-3, the panel here acknowledged it is "reasonable” to read RJ. Reynolds’s treatment of Zauderer as a holding — see AMI I, 746 F.3d at 1073 n. 1 ("We recognize that reasonable judges may read Reynolds as holding that Zauderer can apply only where the government's interest is in correcting deception.”) (emphasis added). Accordingly, the appropriate step under our procedure was to include an Irons footnote rather than overruling RJ. Reynolds outright.