**UNITED STATES of America, Appellee,**

**v.**

**Robert MORRIS, Appellant.**

**Nos. 96–3070, 96–3071.**

United States Court of Appeals,
District of Columbia Circuit.

Argued April 18, 1997.

Decided June 13, 1997.

August E. Flentje, Student Counsel, argued the cause for appellant. With him on the brief were Steven H. Goldblatt, Washington, DC, appointed by the court, and Jennifer K. Godsil, Student Counsel.

Mary–Patrice Brown, Assistant U.S. Attorney, Washington, DC, argued the cause for appellee. With her on the brief were Eric H. Holder, Jr., U.S. Attorney, John R. Fisher, Thomas J. Tourish, Jr., and John M. Facciola, Assistant U.S. Attorneys.

Before EDWARDS, Chief Judge, SILBERMAN and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

Before the decision of the Supreme Court in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), a person guilty of certain offenses (mainly drug offenses) could also be found guilty of "us[ing]" a firearm in violation of 18 U.S.C. § 924(c) if the weapon were sufficiently accessible to the defendant to be *available* for active use during commission of the predicate crime. See *id.* at ——, 116 S.Ct. at 505, citing *United States v. Bailey,* 36 F.3d 106, 115 (D.C.Cir. 1994) (en banc). The § 924(c) violation carried a mandatory five-year term, which Congress explicitly directed should not run concurrently with any other sentence. 18 U.S.C. § 924(c). A common collateral effect of the § 924(c) conviction, however, was to relieve the defendant of an otherwise mandatory two-level enhancement under § 2D1.1(b)(1) of the Sentencing Guidelines, for *possession* of a gun during a drug trafficking crime. "To avoid double counting, when a sentence under [§ 924(c) ] is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for firearm discharge, use, or possession is not applied in respect to such underlying offense." U.S. Sentencing Guidelines Manual ("U.S.S.G") § 2K2.4, Background.

*Bailey* changed the rules of the game, making clear that "use" for purposes of § 924(c) required the defendant's "active employment" of the gun. —— U.S. at ——, 116 S.Ct. at 505. The present case addresses—not for the first time—the question whether a court that *vacates* a five-year § 924(c) sentence as a result of *Bailey* can proceed to apply the Guidelines' two-level enhancement. In *United States v. Rhodes,* 106 F.3d 429, 432–33 (D.C.Cir.1997), we held that 28 U.S.C. § 2106 authorizes a district court to apply the enhancement to a defendant who success-

fully challenges a § 924(c) conviction on direct appeal. Here we consider whether it may do so when the § 924(c) conviction is vacated as a result of a collateral challenge under 28 U.S.C. § 2255. Although the operative statutory language is slightly different, the reasoning of *Rhodes* calls for the same result here.

The two appellants' sentencing histories are textbook instances of post-*Bailey* substitutions of a two-level enhancement for a § 924(c) conviction—in both cases reducing the aggregate sentence. Robert Staton, on his conviction for drug-trafficking in violation of 21 U.S.C. §§ 841(a) & (b)(1)(A)(iii), for a § 924(c) violation and for a third count not at issue here, received a 211–month term. It consisted of a 151–month sentence for the § 841 violation (at the bottom of the applicable guideline range based on an offense level of 32 [1]), plus 60 months under § 924(c). When Staton challenged his § 924(c) conviction under § 2255, the government conceded that it was not sustainable under *Bailey.* Vacating the § 924(c) conviction and sentence, the court added the two-level enhancement and sentenced him to 188 months, at the bottom of the Guidelines range for the new offense level of 34 and providing a net reduction of 23 months.

Robert Morris originally received a 130–month sentence, consisting of 70 months for his violation of §§ 841(a) & (b)(1)(B)(iii) (the bottom of the range for offense level 26), plus 60 months under § 924(c). After vacating the § 924(c) sentence on Morris's motion, the court resentenced him to 87 months under the drug charge, at the bottom of the range for the new offense level of 28 and yielding a net diminution of 43 months. (The change was more valuable to Morris because a two-level increase at a low offense level adds fewer months than at a higher level. An increase of six levels roughly doubles the sentence, regardless of the starting level. See U.S.S.G. Ch. 1, Pt. A, § 4(h).)

◼ Appellants first question whether the trial court had authority to increase their

---

**1.** Appellant Staton received 12 months on the third count, to be served concurrently with the

drug-trafficking penalty.

§ 841 sentences. Under 18 U.S.C. § 3582(c) a court may modify a sentence only in three circumstances: (1) on motion of the Bureau of Prisons, (2) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," and (3) to reflect a post-sentence reduction in the applicable sentencing guidelines. No one contends that either of the first or third possibilities, or Rule 35, is applicable. The only statute offered as a possible source of authority is the federal habeas statute:

> A prisoner ... claiming the right to be released upon the ground that the sentence ... is ... subject to collateral attack, may move the court ... to vacate, set aside or correct the sentence.

> [If the court grants the motion it] shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255.

Appellants, focussing on the word "sentence," argue that the statute is quite narrow and allows the judge to impose a new sentence only as a substitution for the vacated penalty for a single, specific offense. *Rhodes,* they argue, was based on the authorization in 28 U.S.C. § 2106 for courts on direct appeal to revisit a "judgment, decree, or order," a set of seemingly broader terms.

Even the narrow linguistic distinction urged by appellants misses; § 2255 explicitly directs the court to vacate the "judgment," and appellants do not dispute the singularity of the judgments under which each is imprisoned. Presumably the power to "resentence" the prisoner and to "correct the sentence as may appear appropriate" must be construed in that light. Quite apart from that, appellants are simply wrong in their claim that the word "sentence" necessarily refers to the punishment for a single count. Sometimes it does, sometimes it doesn't; the answer is completely contextual. For example, while the sentencing guideline regarding sentencing on multiple counts talks of "[t]he sentence to be imposed on *a* count," see U.S.S.G. § 5G1.2(a) (emphasis supplied), it also requires that the judge add up the available punishments on each count to "produce a combined *sentence* equal to the total punishment." See *id.* at § 5G1.2(d) (emphasis supplied). And § 3D1.5 instructs judges to "[u]se the combined offense level to determine the appropriate sentence." Indeed, it was a purpose of the Guidelines to aggregate multiple counts in a way that sensibly fits penological goals; among other things, the Guidelines seek to minimize "the possibility that an arbitrary casting of a single transaction into several counts will produce a longer sentence," U.S.S.G. Ch. 1, Pt. A, § 4(e) (policy statement), referring obviously to the sentence as a single aggregate. Of course the Sentencing Commission is not Congress, and its work came after the enactment of § 2255 in 1948. See Judiciary Act of June 25, 1948, ch. 646, 62 Stat. 869, 967. But the various uses of the word "sentence" by a body constituted by Congress for rationalizing sentencing clearly demonstrates the elastic quality of the word.

Here, the provisions for an enhancement under § 2D1.1(b)(1) and for sentencing under § 924(c) are interdependent and, as we said in *Rhodes,* "mutually exclusive." See *Rhodes,* 106 F.3d at 432. If there is a conviction under § 924(c), there is a mandatory five-year term and an equally mandatory block on any § 2D1.1(b)(1) enhancement. Remove the § 924(c) conviction, and the block disappears, bringing the mandatory § 2D1.1(b)(1) enhancement into play. Under these circumstances, § 2255's grant of power to the court to "correct the sentence as may be appropriate" necessarily includes the power to apply the § 2D1.1(b)(1) enhancement at the same time as it removes the hitherto blocking § 924(c) conviction. Compare U.S.S.G. § 2 C1.1, Application Note 3 (noting that two-level enhancement for crimes that involve abuse of public trust should generally not be applied in cases of a bribery conviction).

Every circuit to have considered the issue has approved application of the § 2D1.1(b)(1) enhancement to a defendant who has secured reversal of a § 924(c) conviction under § 2255. The reasoning has varied. See *United States v. Rodriguez,* 114 F.3d 46, 48 (5th Cir.1997) (court authorized by § 2255 to impose "correct" sentence); *United States v.*

*Harrison,* 113 F.3d 135, 137 (8th Cir.1997) (interdependence of § 924(c) sentence and § 841 enhancement means that terms of imprisonment imposed under both constitute a "sentence"); *United States v. Rodriguez,* 112 F.3d 26, 29–30 (1st Cir.1997) (finding that "sentencing package" doctrine makes it "appropriate" to modify sentences related to the one challenged under § 2255); *United States v. Davis,* 112 F.3d 118, 121–22 (3d Cir.1997) (finding that resentencing is authorized under § 2255 because of interdependence of § 924(c) sentence and § 841 sentence); *United States v. Handa,* 110 F.3d 42, 44 (9th Cir.1997) (finding that § 2106 gives authority in a § 2255 case for remanding for resentencing); *United States v. Hillary,* 106 F.3d 1170, 1171 (4th Cir.1997) (finding that plain language does not restrict word "sentence" to a particular sentence and that § 2255 gives court broad powers to resentence as may be "appropriate"); *United States v. Smith,* 103 F.3d 531, 534 (7th Cir.1996) (relying on "sentencing package" doctrine). Cf. *United States v. Binford,* 108 F.3d 723, 729–30 (7th Cir.1997) (applying "sentencing package" theory but expressing doubts). Counsel for appellants suggested at oral argument that the variety of reasoning showed the shakiness of the courts' conclusion. We think, rather, that the uniformity of result suggests the implausibility of any other outcome. For our purposes, the outcome is compelled by the complete interdependence and mutual exclusivity of the two provisions. Less plain cases must await another day.

■ The appellants' double-jeopardy and substantive due process claims fare no better. In *United States v. Fogel,* 829 F.2d 77, 87 (D.C.Cir.1987), we distilled from Supreme Court cases the principle that a defendant's double jeopardy attack on an increase in a sentence depended upon his having "a legitimate expectation of finality" in the prior sentence. We assume arguendo that for purposes of this analysis the "sentence" in question was each appellant's § 841 sentence rather than his aggregate sentence (each defendant, of course, enjoyed a reduction in his aggregate sentence). Because of the interdependency and mutual exclusivity of the § 924(c) conviction and the § 2D1.1(b)(1) enhancement, the moment the court accepted appellants' challenges to their § 924(c) convictions it removed the condition underlying the original legality of their unenhanced § 841 sentences. Whether those § 841 sentences actually became illegal at that moment may be too metaphysical a question to answer. But given the interdependency, the appellants could not—at the moment of launching their challenges—have entertained any reasonable expectation in the finality of their § 841 sentences. *Rhodes,* 106 F.3d at 432 n. 3. It makes no difference that these defendants challenged their § 924(c) sentences under § 2255, while in *Rhodes* the challenge occurred on direct appeal. In both the defendant "voluntarily" brought the challenge, *id.,* and that controls. Cf. *North Carolina v. Pearce,* 395 U.S. 711, 721, 89 S.Ct. 2072, 2078–79, 23 L.Ed.2d 656 (1969) (holding that fact that conviction has been overturned at "defendant's behest" removes double jeopardy bar to increased sentence after retrial).

■ Appellants make much of certain language in *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), from which they try to derive a principle that any increase on resentencing violates the double jeopardy clause unless a statute specifically authorizes the increase. If any such specificity criterion can properly be derived from *DiFrancesco,* it is satisfied here. There the sentence was increased as a result of a *government* appeal, and the Court, responding to an argument that a defendant's perception of his sentence jells at the point where he starts serving it, observed:

> Although it might be argued that the defendant perceives the length of his sentence as finally determined when he begins to serve it, and that the trial judge should be prohibited from thereafter increasing the sentence, that argument has no force where, as in the dangerous special offender statute, Congress has specifically provided that the sentence is subject to appeal. Under such circumstances there can be no expectation of finality in the original sentence.

*Id.* at 139, 101 S.Ct. at 438–39. Although the Court used the words "specifically provided" in beating down the proposition that it had

said "might be argued," the opinion contains no hint that the Court meant to create a new doctrine requiring specificity. It gives every appearance of simply looking to the defendant's reasonable expectations, in accordance with prior cases. In any event, the language of § 2255, as applied to penalties with the interdependent and mutually exclusive character of § 924(c) and § 2D1.1(b)(1), satisfies any specificity requirement that might exist.

■ Analysis under the due process clause appears to add only one special concern to double jeopardy considerations—concern that a resentencing precipitated by a defendant's exercise of a right (such as appeal) be free of vindictiveness, lest fear of an increase chill the exercise of the right. See *Pearce*, 395 U.S. at 725, 89 S.Ct. at 2080. Imposition of exactly the sentence that the defendant would have received but for the erroneous application of § 924(c)—in each case at the bottom of the Guidelines range—reflects no glimmer of vindictiveness. There is no due process violation.

■ Morris makes an argument unique to his circumstances. The district judge before whom he was tried died before his § 2255 motion was heard, so the motion was reassigned to another district judge. In finding the possession that is necessary for a § 2D1.1(b)(1) enhancement, the district court relied on the jury verdict convicting Morris under § 924(c), plus our decision upholding that conviction. We had held that the evidence, viewed in the light most favorable to the government, satisfied our then-prevailing standards for a § 924(c) conviction. See *United States v. Morris*, 977 F.2d 617, 623 (D.C.Cir.1992). "[B]ased upon the finding of the jury in the case," the § 2255 court said, "the court can find by a preponderance of the evidence that Mr. Morris had knowing possession, either actual or constructive possession, of a gun."

The government says we should apply plain error analysis because Morris failed to object to the court's not exercising independent judgment. Indeed, counsel appeared to argue simply that the jury instructions' noncompliance with *Bailey* impaired the value of the jury verdict as an indicator of possession—but without explaining how, even un-der a pre-*Bailey* instruction, a jury could have found a § 924(c) violation on the evidence here without also finding possession. It was only in this context that counsel said that "the court needs [a] firm ... footing to enhance this sentence." Accordingly, we review only for plain error.

■ Any possible error on this point is not plain. Under the Supreme Court's and our cases it is far from clear or obvious that the defendant has a right to an independent judicial finding on a sentencing fact that the jury has necessarily found beyond a reasonable doubt. Cf. *Johnson v. United States*, — U.S. ——, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (to be "plain" error must be "clear" or "obvious"). It is true that in the face of a jury verdict of exoneration (i.e., a finding that the prosecution has not proved conduct beyond a reasonable doubt), a sentencing court can find for sentencing purposes that the conduct occurred (by a preponderance). See *United States v. Watts*, — U.S. ——, —— – ——, 117 S.Ct. 633, 637–38, 136 L.Ed.2d 554 (1997) (per curiam). This suggests a norm of independent determination—although any such implication is qualified by the differing burdens of persuasion. See *id*. On the other hand, in dictum we have suggested that it "might be anomalous" for a trial court to withhold a sentencing enhancement for perjury where the defendant told a story on the stand that was totally at odds with the jury verdict. See *United States v. Thompson*, 962 F.2d 1069, 1071–72 (D.C.Cir.1992). The dictum suggests limits to the judge's independence. But in the same case we noted that the decision to let the case go to the jury (like an appellate decision upholding such a ruling) "says only that a reasonable jury could find guilt beyond a reasonable doubt, not that a reasonable judge would necessarily agree." *Id*. at 1072.

■ Further, even if there were a general norm requiring independent judicial determination, it might be qualified in the narrow circumstances presented here—where, because of the death of the trial judge, insistence on an independent finding would require a substantial repetition of the trial if

the issue turned on credibility. Indeed, Fed. R.Crim.P. 25(b) authorizes a replacement judge to take over after the verdict if the judge before whom the case was tried dies or is similarly disabled. The rule also permits the grant of a new trial if the replacement judge is satisfied that "a judge who did not preside at trial cannot perform those duties." In *United States v. Thomas*, 114 F.3d 228 (D.C.Cir.1997), where the defendant claimed that credibility disputes in the trial evidence made the replacement judge's reading of the transcript an inadequate substitute for a new trial, we reviewed the new judge's decision to proceed for abuse of discretion and found none. Op. at 253–55. If there was error here, it could not have been plain.

The revised judgments of conviction are

*Affirmed.*