Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 3, 2002        Decided August 1, 2003

No. 01-3067
& No. 01-3099

UNITED STATES OF AMERICA,
APPELLEE

v.

SHECHEM LAFAYETTE,
APPELLANT

Appeals from the United States District Court
for the District of Columbia
(No. 88cr00254–01)

*Edward C. Sussman*, appointed by the court, argued the cause and filed the briefs for appellant.

*Shechem Lafayette* filed a pro se supplemental brief.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*David B. Goodhand*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, and *John R. Fisher* and *Roy W. McLeese III*, Assistant U.S. Attorneys. *Mary-Patrice Brown*, Assistant U.S. Attorney, entered an appearance.

Before: RANDOLPH and GARLAND, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: In *Apprendi v. New Jersey*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000). Appellant Shechem Lafayette, who was convicted of multiple narcotics and firearms charges, contends that the 292–month sentence he received on one count of possession with intent to distribute 50 grams or more of cocaine base exceeds the maximum permissible sentence under *Apprendi* by 52 months. We conclude that any *Apprendi* error in the sentence imposed on that single count was harmless, because the United States Sentencing Guidelines would in any event have required the district court to run the sentences on his multiple counts consecutively until the sum yielded the same 292 months.

## I

On November 9, 1988, a jury of the United States District Court for the District of Columbia found Lafayette guilty on all counts of a nine-count indictment charging him with federal narcotics and firearms violations.[1] On January 27,

---

[1] The nine counts were: (1) conspiracy to distribute and to possess with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 846 and 841(a); (2) conspiracy to distribute and to possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 846 and 841(a); (3) conspiracy to use and carry firearms during and in relation to a drug trafficking offense, in violation of 18 U.S.C. §§ 371 and 924(c); (4) possession with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a) and (b)(1)(A)(iii); (5) possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a); (6) using and carrying a firearm

1989, the district court sentenced Lafayette to a total of 410 months' imprisonment. The court imposed 290–month terms for each of three convictions relating to cocaine, one of which (Count Four) involved 50 grams or more of cocaine base; 60–month terms for each of three convictions relating to marijuana; and 60–month terms for each of three counts relating to using and carrying a firearm during and in relation to a drug trafficking offense. The court ordered that all of the sentences run concurrently, with the exception of two of the 60–month firearms sentences, which were to run consecutively to each other and to one of the 290–month sentences.[2] Lafayette filed a direct appeal, and on February 22, 1990, we affirmed his convictions. *United States v. Lafayette*, 896 F.2d 599 (D.C. Cir. 1990) (table). Lafayette did not file a petition for a writ of certiorari, and his convictions became final no later than May 23, 1990, the date on which the time for filing such a petition expired. *See Clay v. United States*, 123 S. Ct. 1072, 1076 (2003); *United States v. Hicks*, 283 F.3d 380, 387 (D.C. Cir. 2002).[3]

Five years later, on June 15, 1995, Lafayette mounted a collateral attack on his sentence, moving to vacate and/or amend it pursuant to 28 U.S.C. § 2255. On August 22, 1996, the district court denied all but four of the numerous claims that Lafayette had raised by that date, either in his June 1995 motion or in later "supplements." On September 30,

during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c); (7) another charge of possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a); (8) possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a); and (9) another charge of using and carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c).

[2] In 1997, the district court granted the government's motion to correct clerical errors in the above-described sentence, increasing Lafayette's total sentence to 470 months. Lafayette did not appeal.

[3] Lafayette filed a motion for a new trial soon after he was convicted, alleging "newly discovered evidence" of police misconduct. *See* FED. R. CRIM. P. 33. The district court denied Lafayette's motion, and this court affirmed. *United States v. Lafayette*, 983 F.2d 1102, 1103 (D.C. Cir. 1993).

1999, the district court denied the remaining four claims, as well as all of the additional claims that Lafayette had filed in the interim, with one exception: in light of the Supreme Court's then-recent ruling in *Jones v. United States*, 526 U.S. 227 (1999), the court directed the government to respond to Lafayette's argument that the court had "erred in attributing a drug quantity and type to Lafayette at sentencing." *United States v. Lafayette*, No. 88cr00254–01, at 11 (D.D.C. Sept. 30, 1999). Furthermore, on the basis of the Supreme Court's intervening decision in *Bailey v. United States*, 516 U.S. 137 (1995)—which defined the meaning of "using" a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)—the court granted Lafayette's and the government's joint motion to vacate two of the defendant's firearms convictions. As a result of that vacatur, the court scheduled a hearing to resentence the defendant.

On June 26, 2000, before the resentencing took place, the Supreme Court decided *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In July 2000, Lafayette filed a "Motion for Release from Further Incarceration" based on *Apprendi*. The district court denied the motion on May 23, 2001. The court ruled that *Apprendi* was not retroactively applicable to cases on collateral review; that even if it were, Lafayette had procedurally defaulted by not raising the claim on direct appeal; and that he could not show " 'cause and actual prejudice' . . . for excusing such default." *United States v. Lafayette*, No. 88cr00254–01, at 6–7 (D.D.C. May 23, 2001).[4]

On August 6, 2001, the district court resentenced Lafayette in view of the vacatur of the two firearms counts.[5] The court sentenced Lafayette to a total of 292 months' imprisonment, the bottom of the range determined by the applicable United

---

[4] The court also denied Lafayette's motion for a downward sentencing departure premised on his status as a deportable alien and on his good behavior during his incarceration.

[5] One effect of the vacatur of the firearms counts was to increase the guidelines offense level of the remaining counts, pursuant to U.S.S.G. § 2D1.1. *See United States v. Morris*, 116 F.3d 501, 503 (D.C. Cir. 1997).

States Sentencing Guidelines (U.S.S.G.). The court imposed a 292–month sentence for Lafayette's conviction on Count Four, the count that charged him with possession with intent to distribute 50 grams or more of cocaine base. The court also prescribed sentences of 240 months for each of the other two cocaine convictions, and 60 months for each of the three marijuana convictions and the surviving firearms conspiracy conviction, all to be served concurrently.

Lafayette filed notices of appeal both from the denial of his § 2255 motion and from his new sentence. With respect to the former, this court directed the district court to determine in the first instance whether a certificate of appealability should be issued. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *United States v. Saro*, 252 F.3d 449, 452 (D.C. Cir. 2001). Although the district court declined to issue one, this court subsequently granted a certificate that was limited to the *Apprendi* issue, and then consolidated the two appeals.

## II

The "lengthy and tortured procedural history" of this case, Appellant's Br. at 1, gives rise to a host of questions concerning both Lafayette's right to assert an *Apprendi* claim at this late stage and the standard of review that would govern any claim that he may assert. We describe some of these issues in the next four paragraphs.

The government contends that Lafayette may not make any claim at all under *Apprendi* for two reasons. First, it argues that *Apprendi* cannot be applied retroactively on collateral review. Under *Teague v. Lane*, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced," unless the new rule "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," or constitutes a "watershed rule[ ] of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding. 489 U.S. 288, 310, 311 (1989) (citations, internal quotation marks, and alterations omitted). Lafayette responds that

*Teague* is inapplicable to *Apprendi* because, inter alia, *Apprendi* did announce such a watershed rule.

The government disagrees, but also offers a second reason for *Apprendi*'s inapplicability: Lafayette's *Apprendi* motion, it asserts, is barred by the one-year limitations period of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub L. No. 104–132, 110 Stat. 1214, codified in relevant part at 28 U.S.C. § 2255 ¶ 6(1). Lafayette counters that the relevant AEDPA deadline is not ¶ 6(1) of § 2255, but ¶ 6(3)—which permits a prisoner to file a motion within a year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255 ¶ 6(3). The government parries by arguing that ¶ 6(3) is relevant only when the Supreme Court has made a right retroactively applicable, which the Court has not done with respect to *Apprendi*. *See Hicks*, 283 F.3d at 389 (noting the issue but not deciding it). Lafayette ripostes with the claim that ¶ 6(3) permits *this* court to make the retroactivity ruling by applying the principles of *Teague*—thus returning us to the issue that we discussed in the preceding paragraph.

Drawing another, independent line of defense, the government contends that, even if Lafayette's *Apprendi* claim survives both *Teague* and AEDPA, it is doomed because Lafayette did not raise it on direct appeal, and because he cannot satisfy the test described in *Bousley v. United States*: "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" 523 U.S. 614, 622 (1998) (citations omitted). Needless to say, Lafayette disagrees that *Bousley* precludes his *Apprendi* claim, arguing that he had "cause" for not raising such a claim during his trial or on direct appeal because it would have been "novel" to do so that many years before the Supreme Court decided *Apprendi*, *id.* at 622, and that the 52 additional months he must serve under Count Four demonstrates the necessary "prejudice."

Lafayette also seeks to side-step all of the government's defenses by arguing that, even if a collateral attack under *Apprendi* were partially or wholly barred by *Teague*, AEDPA, or *Bousley*, his *Apprendi* challenge still would not fail because it is not properly characterized as collateral. Rather, he contends that when the district court vacated his firearms convictions following *Bailey* and scheduled a resentencing on the remaining counts, his entire "sentence package" was reopened and the court "was required to apply the law in effect at the time of the new sentencing." Appellant's Br. at 10.[6]   In essence, Lafayette argues that the district court should have treated the resentencing as if it were his initial sentencing, and that we should treat this appeal as if it were a direct appeal.   On that theory, we would review the denial of Lafayette's *Apprendi* claim either (1) for plain error, if we deem the claim untimely because it was not raised at trial; or (2) for harmless error, if we regard the assertion of the claim at the resentencing as sufficient.  *See* FED. R. CRIM. P. 52; *United States v. Olano*, 507 U.S. 725, 731–37 (1993).

Although the parties would like us to untie each of these knots, Lafayette's last point permits us to cut through them all.   Even if the appellant were correct as to all of the arguments just discussed, he concedes that we may not set aside his sentence if the government demonstrates that any *Apprendi* error that occurred was harmless—i.e., that it did not affect his substantial rights.  *See* FED. R. CRIM. P. 52(a); *Olano*, 507 U.S. at 734–35.   And because we conclude in the following Part that any such error was in fact harmless, we have no need to pursue these antecedent questions any further.[7]

---

[6]   *But see Dahler v. United States*, 259 F.3d 763, 765 (7th Cir. 2001) ("[A] belated challenge to events that precede a resentencing must be treated as a collateral attack on the original conviction and sentence, rather than as an initial challenge to the latest sentence.").

[7]   In *Caspari v. Bohlen*, the Court instructed: "A threshold question in every habeas case . . . is whether the court is obligated

## III

The only challenge Lafayette raises on this appeal is to the sentence the district court imposed for his conviction on Count Four of his indictment.[8] That count charged a violation of 21 U.S.C. § 841(a) and (b)(1)(A)(iii), which authorizes a 40–year (480–month) maximum sentence for possession with intent to distribute 50 grams or more of cocaine base. The district court sentenced Lafayette to a 292–month term of imprisonment on the basis of that charge.

Under the rule announced in *Apprendi*, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In *United States v. Fields*, this circuit held that "[i]n light of *Apprendi*, it is now clear that, in drug cases under 21 U.S.C. §§ 841 and 846, before a defendant can be sentenced to any of the progressively higher statutory maximums that are based on progressively higher quantities of drugs specified in subsections 841(b)(1)(A) or (B), the Government must state the drug type and quantity in the indictment, submit the required evidence to the jury, and prove the relevant drug quantity beyond a reasonable doubt." 242 F.3d 393, 396 (D.C. Cir. 2001) ("*Fields I*"), *aff'd and amended on reh'g*, 251 F.3d 1041, 1043 (D.C. Cir. 2001) ("*Fields II*"). When those requirements are not met, the statutory maximum is instead set by the only subsection of § 841(b) for which drug quantity is not an element: § 841(b)(1)(C), which authorizes a maximum sen-

to apply the *Teague* rule to the defendant's claim.... [I]f the State ... argue[s] that the defendant seeks the benefit of a new rule of constitutional law, the court *must* apply *Teague before considering the merits of the claim*." 510 U.S. 383, 389 (1994) (second emphasis added). Because our disposition does not require us to consider "the merits" of Lafayette's *Apprendi* claim, this instruction is not applicable and we need not resolve the *Teague* issue. *See Hicks*, 283 F.3d at 389 (similarly declining to decide whether *Apprendi* applies retroactively for purposes of a collateral challenge).

[8] The defendant challenges only his sentence and not his conviction.

tence of 20 years (240 months). *See United States v. Webb*, 255 F.3d 890, 897, 900 (D.C. Cir. 2001).

Although Lafayette's indictment did charge him with possession with intent to distribute 50 grams or more of cocaine base, the district court did not instruct the jury that, to convict Lafayette, it had to find that the amount of the drug involved in his offense was at least 50 grams. On this basis, Lafayette contends that the sentence he received on Count Four—292 months—exceeded by 52 months the maximum sentence that the court could lawfully impose under *Apprendi*. The government does not contest the point, but argues that even if the 292–month sentence on Count Four violated *Apprendi*, Lafayette suffered no prejudice because he would have received the same total sentence in the absence of the alleged error. We agree.[9]

Lafayette does not dispute that, based on the weight of cocaine base involved in his offense as well as other required adjustments, 292 months was well within the sentencing range prescribed by the Sentencing Guidelines. *See* 2001 Presentence Invest. Rep. ¶¶ 21–26. Nor does he contend that the sentences the court imposed on his other six counts of conviction were erroneous. These concessions lead us directly to Guideline § 5G1.2(d), entitled "Sentencing on Multiple Counts of Conviction," which instructs district courts on how to structure a sentence under such circumstances:

> If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts *shall run consecutively*, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all

---

[9] *See Olano*, 507 U.S. at 734 (explaining that normally for an error to "affect substantial rights" it "must have been prejudicial: It must have affected the outcome of the district court proceedings" (alteration omitted)); *Webb*, 255 F.3d at 898 (holding that where the lawful application of the Sentencing Guidelines would result in the same sentence received as a result of an *Apprendi* error, the defendant's substantial rights are unaffected).

counts shall run concurrently, except to the extent otherwise required by law.

U.S.S.G. MANUAL § 5G1.2(d) (emphasis added). Applying the clear language of this guideline, even if the sentence on Count Four were capped by *Apprendi* at 240 months, the district court would have been compelled to run or "stack" the sentences imposed on his multiple counts consecutively until the sum reached the total punishment of 292 months—the minimum of the applicable guidelines range.[10] This could have been accomplished, without exceeding the statutory maximum on any count, by running any one of Lafayette's 240–month sentences consecutively with his sentence on any other count.

Lafayette does not maintain that "stacking" his multiple sentences in this fashion would violate *Apprendi*. *See Fields II*, 251 F.3d at 1043–44 ("*Apprendi* does not apply to enhancements under the Sentencing Guidelines when the resulting sentence remains within the statutory maximum.").[11]

---

[10] Application Note 1 to § 5G1.2 explains that the "total punishment" referred to in the section is "determined" by calculating "the adjusted combined offense level and the Criminal History Category" under the guidelines. U.S.S.G. MANUAL § 5G1.2, cmt. n.1; *see United States v. Velasquez*, 304 F.3d 237, 241 (3d Cir. 2002) ("Total punishment is calculated by combining the factors in the relevant sections of the Guidelines without respect to maximum statutory sentences." (citing U.S.S.G. MANUAL § 3D1.5)).

[11] *See also United States v. White*, 240 F.3d 127, 135 (2d Cir. 2001); *United States v. Buckland*, 289 F.3d 558, 570–71 (9th Cir. 2002) (en banc) (holding that "*Apprendi* is not implicated" when "not one of the stacked consecutive sentences exceeds the statutory maximum for that count"). In *Apprendi* itself, the Supreme Court said that the possibility that the state could have employed consecutive sentencing to achieve a sentence in excess of the statutory maximum on a single count was not relevant to the "narrow issue" of whether the sentence imposed on "that count" was constitutional. 530 U.S. at 474. In the instant case, the government does not dispute that *Apprendi*, if applicable, renders the sentence imposed on Count Four unconstitutional; the only question is whether that

Rather, he argues that stacking is not mandatory; that were we to return the case to the district court, it might decide to set his multiple sentences to run concurrently rather than consecutively; and that, as a consequence, his total prison term might amount to only 240 months—the highest statutory sentence that could be imposed on any individual count. Lafayette recognizes that in tendering this argument he is "swimming against the legal current," Appellant's Br. at 6, and indeed he is. All of the circuits that have addressed the issue, with one possible exception, have held that (where applicable) § 5G1.2(d) *requires* the imposition of consecutive sentences, and that such stacking can render an *Apprendi* error with respect to any individual count nonprejudicial.[12]

We agree with our sister circuits. Guideline § 5G1.2(d)'s command that multiple sentences "shall" run consecutively in the circumstances of this case leaves no room for district court discretion.[13] The application note to Guideline § 5G1.2

---

error prejudiced Lafayette. *See United States v. Hernandez*, 330 F.3d 964, 983 n.13 (7th Cir. 2003); *see also White*, 240 F.3d at 135.

[12]  *See United States v. Outen*, 286 F.3d 622, 639–40 (2d Cir. 2002); *United States v. Stokes*, 261 F.3d 496, 500–01 (4th Cir. 2001); *United States v. Garcia*, 322 F.3d 842, 845–46 (5th Cir. 2003); *United States v. Page*, 232 F.3d 536, 544–45 (6th Cir. 2000); *United States v. Hernandez*, 330 F.3d 964, 982–84 (7th Cir. 2003); *United States v. Diaz*, 296 F.3d 680, 683–85 (8th Cir. 2002) (en banc); *United States v. Buckland*, 289 F.3d 558, 570–71 (9th Cir. 2002) (en banc); *United States v. Lott*, 310 F.3d 1231, 1242–43 (10th Cir. 2002); *United States v. Davis*, 329 F.3d 1250, 1253–54 (11th Cir. 2003). Although the Third Circuit held to the contrary in *Velasquez*, 304 F.3d at 243–45, it recently took the same position as the other circuits in an opinion that did not mention *Velasquez*. *See United States v. Jenkins*, 333 F.3d 151, 155 (3d Cir. 2003). We further note that, although some of the above-cited cases involved the plain rather than harmless error standard, the meaning of "prejudice" under each standard is the same. *See Olano*, 507 U.S. at 734.

[13]  See cases cited *supra* note 12; *cf. United States v. Hall*, 326 F.3d 1295, 1300 (D.C. Cir. 2003) (holding that consecutive terms are compelled by § 5G1.3(a), which provides that "the sentence for the

is equally clear and equally mandatory: "If no count carries an adequate statutory maximum, *consecutive sentences are to be imposed* to the extent necessary to achieve the total punishment." U.S.S.G. MANUAL § 5G1.2, cmt. n.1 (emphasis added). Hence, it would serve no purpose to remand the case for yet another resentencing, as doing so would only yield the same total punishment: a sentence of 292 months' incarceration.

Lafayette contends that, notwithstanding the mandatory nature of the guidelines, the relevant sentencing statutes confer discretion on the district courts. He points first to 18 U.S.C. § 3584, which states:

> (a) Imposition of concurrent or consecutive terms.—If multiple terms of imprisonment are imposed on a defendant at the same time, . . . the terms *may* run concurrently or consecutively. . . .
>
> (b) Factors to be considered in imposing concurrent or consecutive terms.—The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall *consider*, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a).

*Id.* (emphasis added). Lafayette discerns indicia of discretion in both the statute's statement that multiple terms "may" run concurrently or consecutively, and in its instruction that the court shall "consider" the factors set forth in § 3553(a). The latter section states:

> (a) Factors to be considered in imposing a sentence.—
> . . . The court, in determining the particular sentence to be imposed, shall *consider* . . . (4) the kinds of sentence

___

instant offense *shall* be imposed to run consecutively to the undischarged term of imprisonment" if the offense was committed while the defendant was, inter alia, on furlough (emphasis added)); *United States v. Monsanto*, 491 U.S. 600, 607 (1989) (declaring that, with reference to a statute providing that a person convicted of specified offenses "shall" forfeit property, "Congress could not have chosen stronger words to express its intent that forfeiture be mandatory").

and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . issued by the Sentencing Commission pursuant to section 994(a)(1). . . .

*Id.* § 3553(a) (emphasis added). Reading this section as he reads § 3584—i.e., to require the district court to do nothing more than "consider" the Sentencing Guidelines—Lafayette concludes that the district court retains discretion to "consider the ramifications of the sentencing guidelines and to fashion a just punishment." Reply Br. at 4.

But following the defendant down the path of his logic would lead to the conclusion that all of the Sentencing Guidelines—not merely those relating to concurrent and consecutive sentencing, since § 3553(a) applies to all sentencing decisions—are mere advisories for sentencing judges to consider in the exercise of their discretion. That conclusion, of course, is plainly incorrect. As the Supreme Court said in *Mistretta v. United States*, the Sentencing Reform Act of 1984 "makes the Sentencing Commission's guidelines *binding* on the courts. . . ." 488 U.S. 361, 367 (1989) (emphasis added) (citing 18 U.S.C. § 3553(a) and (b)); *see Koon v. United States*, 518 U.S. 81, 92 (1996) ("A district judge now *must* impose on a defendant a sentence falling within the range of the applicable Guideline. . . ." (emphasis added)); U.S.S.G. Manual ch. 1, pt. A.2, intro. cmt. ("Pursuant to the [Sentencing Reform] Act, the sentencing court *must* select a sentence from within the guideline range." (emphasis added)).[14]

---

[14] There is a single exception to this rule: a sentencing judge has "discretion to depart from the guideline applicable to a particular case if the judge finds an aggravating or mitigating factor present that the Commission did not adequately consider when formulating the guidelines." *Mistretta*, 488 U.S. at 367; *see Koon*, 518 U.S. at 92; 18 U.S.C. § 3553(b); U.S.S.G. Manual § 5K2.0. The possibility of a departure from the applicable guidelines is not before us, however, because the district court denied the only departure requests Lafayette made—based on his status as a

Lafayette's error lies in reading §§ 3584 and 3553(a) without reference to the balance of the statutory sentencing structure. Although § 3584(a) provides that a court "may" run multiple terms concurrently or consecutively, Congress also authorized the Sentencing Commission, in 28 U.S.C. § 994(a)(1), to promulgate guidelines "for use of a sentencing court in determining the sentence to be imposed in a criminal case, including . . . (D) a determination whether multiple sentences to terms of imprisonment should be ordered to run concurrently or consecutively." 28 U.S.C. § 994(a)(1)(D). And, as the Supreme Court said in *Mistretta*, subsections 3553(a) and (b) make application of those guidelines *binding* on the district court. 488 U.S. at 367. Subsection 3553(b) provides that "[t]he court *shall* impose a sentence of the kind, and within the range, referred to in subsection (a)(4)," 18 U.S.C. § 3553(b) (emphasis added), and the kind and range of sentence referred to in subsection (a)(4) is that "set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1)," *id.* § 3553(a)(4)(A). The guidelines' restriction on the grant of discretion contained in § 3584(a) is not unique: most criminal statutes grant district courts wide discretion over the length of a defendant's sentence, but the guidelines as a whole function to narrow that discretion considerably. *Compare, e.g.*, 21 U.S.C. § 841(b)(1)(C) (prescribing a sentence of not more than 20 years (240 months) for distribution of a controlled substance), *with* U.S.S.G. MANUAL § 2D1.1(a)(3), (c)(1), & ch. 5, pt. A (prescribing a sentence of not less than 235 months for distribution of 1.5 kilograms of cocaine base).

The same analysis applies to § 3584(b)'s instruction that the district court shall "consider" the factors set forth in

---

deportable alien and on his alleged good behavior, *see supra* note 4—and he has neither appealed those denials nor suggested any other mitigating factor that would justify a departure. *Cf. United States v. Draffin*, 286 F.3d 606, 610 (D.C. Cir. 2002) (holding that the court of appeals will reject a claim that the sentencing court erred in failing to make an unrequested departure unless the defendant "unequivocally demonstrate[s] the sentencing court misconstrued its authority to depart").

§ 3553(a). Although § 3584(b) only requires the court to "consider" those factors—one of which is the kind and range of sentence established by the Sentencing Guidelines—§ 3553(b) makes clear that where the guideline in question is mandatory, the district court's consideration is at an end. *See Mistretta*, 488 U.S. at 367; *United States v. Bruce*, 285 F.3d 69, 71–74 (D.C. Cir. 2002); *United States v. Garcia*, 322 F.3d 842, 846 (5th Cir. 2003). On the other hand, where the guideline is itself only advisory, the district court retains a measure of discretion and is free to consider the other factors listed in § 3553(a).[15] Because § 5G1.2(d) is a mandatory guideline, and in this case would compel the district court to impose consecutive sentences totaling 292 months' imprisonment, Lafayette was not prejudiced by the imposition of the same sentence on Count Four.

## IV

For the foregoing reasons, we conclude that, even if *Apprendi* obligated the district court to reduce Lafayette's sentence on Count Four, Guideline § 5G1.2(d) would have required the court to impose the same total term of imprisonment that Lafayette is currently serving. Accordingly, any *Apprendi* error was harmless, and the decisions of the district court are

*Affirmed.*

---

[15] *See, e.g.*, U.S.S.G. MANUAL § 3D1.2 (providing that, "[f]or multiple counts of offenses that are not listed [in the guideline], grouping under this subsection *may or may not be appropriate*; a case-by-case determination must be made based upon the facts of the case and the applicable guidelines" (emphasis added)); *id.* § 5F1.1 ("Community confinement *may* be imposed as a condition of probation or supervised release." (emphasis added)); *id.* § 5F1.4 ("The court *may* order the defendant to pay the cost of giving notice to victims pursuant to 18 U.S.C. § 3555." (emphasis added)).